Henry T. FILLION, Appellant,

v.

Diane Thomson TROY, Appellee.

No. 01–81–0713–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 10, 1983.

Rehearing Denied June 23, 1983.

Sidney Farr, Houston, for appellant.

Thomas Conner, Houston, for appellee.

Before WARREN, BASS and BULLOCK, JJ.

WARREN, Justice.

This is an appeal from a judgment rescinding a mutual release and three deeds and awarding appellee $90,000 punitive damages.

In October, 1966, appellee's father was killed. This resulted in prolonged litigation, and as of March, 1972, appellee had received no distribution of her father's estate which he had devised her. She then hired appellant, who had been licensed to practice law for about a year and a half, to expedite the distribution of the property in the estate. Although there is evidence of an initial fee agreement under which appellee agreed to pay appellant $40 an hour for his services, the only contract admitted into evidence provided that appellant would receive $50 per hour. At that time, the will had been admitted to probate, all estate work and tax returns had been completed, and the

only impediment to distribution was a lack of clearance from the Internal Revenue Service. On May 28, 1972, the probate court partitioned the estate between appellee and her mother.

From the date appellee signed the fee agreement until May, 1973, appellant engaged in an unbelievable course of conduct. He obtained from appellee deeds to three tracts of real estate, valued at $95,950, 17 oil paintings and cash. For the realty, appellant allowed appellee a credit of $18,000 on her legal fees, he delivered her a promissory note for $25,000, and assumed a $5,000 note. For the oil paintings, he gave appellee a $3,500 credit on her legal fees. He later returned 14 of these paintings in return for her giving him a $9,750 credit on the $25,000 note. Although it could be argued that appellant performed some serviceso of value to appellee, it is difficult to glean from the record what they were. At the time of the employment agreement, appellee was 22 years old and appellant was 42. Appellee fell in love with appellant and their relations became intimate.

Appellee sued appellant, asking for recission of the deeds and release, for damages, punitive damages and other equitable relief. She alleged a violation of the attorney-client relationship, fraud, undue influence, violation of fiduciary relationship and the violation of various attorney disciplinary rules.

Among other things, the jury found:
(1) that the fees charged by appellant were unreasonable;
(2) that appellant did not make reasonable use of the confidence placed in him by Diane Troy, when he obtained the three deeds and the mutual release;
(3) that the transactions involving the deeds and release were not fair and equitable to appellee;
(4) that there was not good faith by appellant to fully inform appellee of the nature and effect of the transaction;
(5) that the fair market value of the properties, on the date of their conveyance were as follows:
(a) Texaco property—$69,450

(b) 30 acres $22,500
(c) Humble lot—$4,000
(6) that appellant represented to appellee that the execution of the release was for their mutual benefit, that this was false, that appellee acted in reliance on such representation, and that appellant knew the representations was false;
(7) that appellee was entitled to $90,000 exemplary damages, and
(8) that appellant obtained the property and release as a result of undue influence.

On the verdict, the court granted recission of the deeds and release and awarded appellee $90,000 exemplary damages.

In 15 points of error, appellant claims that certain issues were improperly submitted to the jury, that exemplary damages were improperly awarded, that the answer to certain issues were not supported by the evidence, and that the court erred in admitting the testimony of a real estate appraiser. We affirm the judgment of the trial court.

■ Appellant's first and second points of error complain that the court erred in submitting special issues 2, 3, and 4, contending that the pleadings did not support their submission, that the issues unduly emphasized appellee's theory of the case, that they placed a greater burden on appellant than the law imposed, and that the issues "particularized too much."

The three issues asked the jury to find whether appellant, in obtaining the release and deeds from appellee, (1) made reasonable use of the confidence placed in him by appellee; (2) whether the transactions were fair and equitable to Diane Troy; and, (3) whether appellant exercised good faith in informing appellee of the nature and effect of the transactions. The jury answered each of the issues in the negative.

The issues complained of by appellant are identical to those approved in *Cole v. Plummer,* 559 S.W.2d 87 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.) Appellant's first two points of error are overruled.

■ In appellant's third, fourth, and fifth points of error, appellant urges: (1) that the law does not authorize the award of punitive damages when no actual damages are awarded; (2) that the amount awarded for punitive damages is excessive; and (3) that no jury finding supports the award of punitive damages.

Although there is authority to the contrary, the greater Texas authority supports the awarding of exemplary damages when recission is allowed, even though no actual damages are awarded. *Russell v. Truitt,* 554 S.W.2d 948 (Tex.Civ.App.—Fort Worth 1977, writ ref'd, n.r.e.); *Nolan v. Bettis,* 577 S.W.2d 551 (Tex.Civ.App.—Austin 1979, writ ref'd, n.r.e.).

■ Appellant next contends that Tex. Bus.Com.Code Ann. § 27.01 (Vernon 1968), governing fraud in real estate transactions, limits the award of exemplary damages to twice the amount of actual damages. We are of the opinion that § 27.01 is not applicable to our facts. In *Nolan v. Bettis, supra,* the court held that the statute was not applicable in an action to cancel a trustee's deed procured by fraud because there was neither a contract nor a sale of land involved. In our case there was neither a contract nor a sale in the sense contemplated by the statute. The evidence suggests that the deeds and release were procured by overreaching, and lack of attentiveness by appellee, rather than by a contract or sale between the parties.

■ Appellant's next contention, that there is no jury finding to support the award of exemplary damages, is contrary to existing law. The jury's answers to issues 2, 3 and 4, as well as to 15 through 19, amounted to a finding of fraud, which authorizes the awarding of exemplary damages. *Dennis v. Dial Finance and Thrift Co.,* 401 S.W.2d 803 (Tex.1966). Although issues 2, 3 and 4 were not framed as fraud issues in the traditional sense, such conduct by an attorney toward a client amounts to fraud.

■ Appellant alleges that the exemplary damages of $90,000 is excessive. Con-

sidering the nature of the case and the jury's findings, we cannot say that the award of exemplary damages was excessive. *Hernandez v. Braddock,* 641 S.W.2d 359 (Tex.App.—Corpus Christi 1982, writ pending.)

Appellant's points of error three, four and five are overruled.

■ Appellant next claims that special issue 21, inquiring whether appellant obtained the deeds and release from appellee as a result of undue influence, should not have been submitted because it was a repetition of other issues, that there was no evidence to support the finding, and that the issue imposed an unwarranted and excessive burden on him. Undue influence is a separate and distinct cause of action from misrepresentation and, as such, was properly submitted in separate jury issues. Viewing the evidence in the light most favorable to the verdict, it shows that appellee was a 22 year old woman unfamiliar with and wary of legal transactions; that she fell in love with appellant and trusted him completely; that she did not understand the significance of these transactions; and that she would obey any instructions or advice by appellant concerning her estate. The evidence also showed that appellant was 20 years older than appellee; that he had many years of business experience before becoming a lawyer, and that his influence over appellee and her trust in him was such that she executed a general power of attorney to appellant. Appellee testified that her confidence in appellant was such that she executed the deeds and other documents without reading them. It is settled that the elements of undue influence may be proved by circumstantial evidence, *Rothermel v. Duncan,* 369 S.W.2d 917 (Tex.1963), and that each case must be decided on its own peculiar facts. *Pearce v. Cross,* 414 S.W.2d 457 (Tex.1966). To prove undue influence, the movant must prove existence and exertion of influence, effective operation of such influence so as to subvert or overpower the mind of a grantor at the time of the execution of the instrument, and that the instrument would not have

been executed except for the influence. *Rothermel v. Duncan, supra.* There is evidence of probative value to support the jury's finding of undue influence. Appellant's sixth, seventh and eighth points of error are overruled.

▆ Appellant's ninth point of error contends that special issues 15 through 19 should not have been submitted because there was no evidence to support their submission. These issues inquired whether appellant represented to appellee that the mutual release was for their mutual benefit, whether the representation was false, whether appellant knew it was false, whether it was made with the intention that appellee would act or rely on it, and whether appellee relied on the representation. All of these issues were answered favorably to appellee. Appellant cites no authority in support of his contention but argues that his statement that it would be of benefit to both of them was true since it would free each of them from debt to the other. The jury had ample evidence to infer that the sole reason for the release was to hold appellant harmless from his indiscretions, and that the release could have been of no benefit to appellee since she had already greatly overpaid appellant for his legal services. This point of error is overruled.

▆ Appellant's 13th point of error alleges that the trial court erred in overruling his objections to the testimony of two attorneys as to the "standard" hourly fee on a probate matter in Harris County, Texas. One testified that the "standard" legal fee for a person in appellant's posture was $20 to $25 per hour, the other testified that it would be $35 per hour. Both testified that appellant's fee of $50 an hour in 1972 was excessive. Although the "standard" legal fee for the type of work described is not an ultimate test, its admission was not harmful error. Seven lawyers and judges testified regarding an attorney's duties under the law and code of ethics and of reasonable attorney's fees. The real question in our case was whether the attorney's fees charged were reasonable or unreasonable.

One of the guidelines to be considered in determining whether a fee is reasonable is the "charge customarily made for like services in the locality for similar legal services". This guideline is the same or nearly the same as to the phrase "standard legal fee". There is no error.

▆ In his 14th point of error, appellant argues that the court erred in allowing a real estate appraiser, Charles Osenbaugh, to testify by reading from his report made in 1971, when the witness admittedly had no independent recollection of the notes regarding the property values stated in his appraisal.

Osenbaugh testified that he had no independent recollection of the notes he made on the details of the appraisal report. He stated that he read a copy of the appraisal to refresh his memory before testifying. He guaranteed the correctness of the report and testified that the writing was made during the usual course of business. When the witness identifies the memorandum and guarantees its correctness, the writing as well as his testimony is admissible. *United States Fire Ins. Co. v. Skattell*, 596 S.W.2d 166 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.). Tex. Law of Evidence, Civil and Criminal, § 547 (Third Edition), Roy R. Ray. This point of error is overruled.

▆ Appellant's last point of error alleges that there is no evidence to support the jury's findings that appellant abused appellee's confidence, that he failed to inform her of the nature and effect of the transactions, and that he dealt unfairly with her. As the evidence amply supported the jury's finding, this point of error is overruled.

We have considered appellant's remaining points of error and sub-points of error and find that they are without merit.

Affirmed.