**Charles MARTIN and Wife, Elssy Martin, Appellants,**

v.

**TEXAS DENTAL PLANS, INC., Appellee.**

**No. 04–96–00252–CV.**

Court of Appeals of Texas, San Antonio.

April 23, 1997.

Rehearing Overruled May 22, 1997.

Karl B. Brock, W. Burl Brock, Watkins & Brock, P.C., San Antonio, for Appellants.

Anthony Icenogle, De Leon & Boggins, P.C., Austin, for Appellee.

Before RICKHOFF, LOPEZ and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

This is an appeal from the entry of judgment in favor of appellee in a wrongful termination suit. In three points of error, appellant contends that 1) the trial court erred in refusing to order that appellant be reinstated in his job; 2) the trial court erred in failing to award appellant punitive damages; and 3) the jury's failure to award damages for mental anguish is against the great weight and preponderance of the evidence.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to this litigation, appellant, Charles Martin, was employed as a typesetter with appellee, Texas Dental Plans, Inc. During his employment, appellant began to suffer from migraine headaches. Appellant attributes his headaches to the sub-standard computer monitors he was using at Texas Dental. Appellant testified that he informed his immediate supervisor, the director of the human resources department, and the president of the company that the computer monitors were contributing to his headaches. However, all three of these individuals testified that appellant never notified them of any work related injuries or problems with the computer monitors. In fact, appellant's supervisor testified that appellant indicated that his headaches were a result of scar tissue on his brain.

Representatives of Texas Dental testified that, in early 1993, the company implemented a new computer system which resulted in the elimination of appellant's position. Appellant was offered a lower paying position which he accepted. Appellant alleges that his position was eliminated because he had reported the computer monitors as an unsafe working condition to the Occupational Safety and Health Administration. Eight days after accepting

his new position, appellant filed a formal complaint with the Texas Workers' Compensation Commission. He was terminated six days later. Appellant alleges that he was terminated because he filed the workers' compensation claim. However, Texas Dental contends that it had no knowledge that appellant had filed a workers' compensation claim at the time he was terminated. According to Texas Dental, appellant was terminated for poor work performance and excessive absenteeism.

Appellant filed this wrongful termination suit and the case was tried to a jury on October 30, 1995. The jury determined that Texas Dental had discharged appellant in violation of the Texas Workers' Compensation Act; that appellant had suffered no actual damages; that Texas Dental had willfully or maliciously discharged appellant; and that appellant was entitled to $100,000.00 in punitive damages. Because the jury found no actual damages, the trial court entered a take nothing judgment in favor of Texas Dental.

## ARGUMENTS AND AUTHORITIES

### A. Liability

In his first point of error, appellant contends that the trial court erred in failing to reinstate him to his former position at Texas Dental. Because appellant's reinstatement point depends on a finding of liability, we will first address Texas Dental's conditional cross point challenging the factual sufficiency of the evidence supporting the jury's finding of wrongful discharge.

■ In considering a factual sufficiency point, we must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not fact finders, we do not pass upon the credibility of witnesses, nor do we substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.,*

705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ The evidence presented at trial regarding whether Texas Dental had notice that appellant had filed a workers' compensation claim prior to his termination was conflicting. Appellant testified that he informed his supervisor that he would file a claim, while Texas Dental representatives testified that no one at Texas Dental knew appellant had filed a claim until after appellant had been terminated. In fact, Texas Dental representatives testified that they were unaware that appellant even had workers' compensation related complaints. Appellant, on the other hand, testified that he made repeated complaints regarding the computer monitors to his supervisor, the human resources director, and the president of the company.

The record also reflects a set of suspicious circumstances from appellant's point of view. Appellant was demoted shortly after filing a complaint with OSHA regarding the working conditions at Texas Dental. Then, only six days after he filed a workers' compensation claim, he was terminated. Texas Dental claims appellant was terminated for poor work performance. However, the record reflects that appellant had only been in his new position for two weeks prior to his termination. It could certainly be argued that two weeks is hardly enough time to develop a poor work performance record.

In light of the conflicting evidence regarding Texas Dental's knowledge of appellant's workers' compensation claim and the close proximity in time between his filing of the claim and his termination, the evidence is sufficient to support a finding that appellant was terminated in violation of section 451.001 of the Texas Labor Code. Appellee's first conditional cross point is overruled.

### B. Reinstatement

By his first point of error, appellant alleges that he is entitled to reinstatement into his former position at Texas Dental. Section 451.002 of the Texas Labor Code provides:

(a) A person who violates Section 451.001 is liable for reasonable damages incurred

by the employee as a result of the violation.

(b) An employee discharged in violation of Section 451.001 is entitled to reinstatement in the former position of employment.

TEX.LAB.CODE ANN. § 451.002 (Vernon 1996). Appellant contends that because the jury determined that he had been discharged from his position at Texas Dental in violation of section 451.001, he is entitled to reinstatement. Appellant affirmatively requested reinstatement both in his pleadings and by oral and written motion.

Texas Dental contends that the remedies of reinstatement and monetary damages are duplicative. According to Texas Dental, appellant elected to submit only the issue of monetary damages to the jury. Because appellant did not submit a jury question regarding reinstatement, Texas Dental argues that he may not now, only after the jury determined that he suffered no monetary damages, seek the remedy of reinstatement.

Texas case law addressing the issue of reinstatement in wrongful discharge cases is sparse. Appellant relies on *Bullock v. Amoco Production Co.*, 608 S.W.2d 899, 901 (Tex. 1980) and *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1087 (1926), for the proposition that statutory remedies are mandatory and must be complied with in all respects. However, while they involve statutes created in derogation of the common law, both of these cases address the necessity for statutory compliance in order for jurisdiction to attach in such cases. Neither case makes mention of the exclusivity of remedies in those cases in which jurisdiction has been satisfied, and, therefore, provides little support for appellant's position.

In *General Elec. Co. v. Kunze*, 747 S.W.2d 826 (Tex.App.—Waco 1987, writ denied), the court held that an employee discharged for filing a workers' compensation claim is not required to seek reinstatement as a prerequisite to being awarded monetary damages under the statute. *Id.* at 831. Texas Dental contends that the language of *Kunze* can be read to mean that reinstatement is an exclusive remedy, and, therefore, appellant lost his right to reinstatement when he submitted the issue of monetary damages to the jury.

However, in *Kunze*, the plaintiff clearly did not seek reinstatement. Therefore, the court did not address the issue of whether both reinstatement and monetary damages would have been available had the plaintiff requested reinstatement. More importantly to this case, *Kunze* provides no guidance as to whether reinstatement is a mandatory remedy when it has been requested and a violation of the Labor Code has been affirmatively found.

■ Because there in no Texas case law to guide us in interpreting section 451.002, we must turn to the plain meaning of the statute. In determining the meaning of a statute where the language of the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). We must follow the clear language of the statute, and seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Monsanto Co. v. Cornerstones Mun. Util. District*, 865 S.W.2d 937, 939 (Tex.1993).

■ Section 451.002 provides that an employee discharged in violation of the Labor Code, is entitled to recover reasonable damages and to be reinstated into his former position. There is nothing in the statute that would indicate that reinstatement and monetary damages are mutually exclusive remedies. In fact, other than the provision that damages must be reasonable, there is no restrictive or disjunctive language governing the remedies at all. Further, the word "entitled" in reference to section 451.002(b) indicates that there is no discretion on the part of the trial court where reinstatement is sought and a violation of the Labor Code has been found.

Support for this interpretation is gained when section 451.002(b) is compared to its federal counterpart. Title VII, 42 U.S.C. § 2000e–5(g) provides that when an employee has been discharged in violation of federal law, the trial court *may* enter an order reinstating the employee to his former position. *Jones v. Glitsch, Inc.*, 489 F.Supp. 990 (N.D.Tex.1980)(emphasis added), aff'd., 634

F.2d 1353 (5th Cir.1980). Federal courts have interpreted the statute to mean that reinstatement is the preferred remedy, but not an absolute right. *E.E.O.C. v. Prudential Federal Savings & Loan Ass'n*, 763 F.2d 1166 (10th Cir.) (noting that whether a federal trial court errs in failing to order reinstatement depends on whether reinstatement is feasible), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Had the Texas legislature intended the remedy of reinstatement to be discretionary, as it is in the federal system, we can only conclude that it would have included discretionary language in the statute similar to the language used in the federal statute. Likewise, had the legislature intended for wrongfully discharged employees to be limited to only one means of recovery, it would have effected such intent through the use of limiting or disjunctive language in the statute.

■ Texas Dental contends that appellant waived his request for reinstatement by failing to submit an issue regarding reinstatement or its feasibility to the jury. However, the clear language of the statute leaves nothing for a jury to determine. Section 451.002(a) provides that an employee is entitled to reasonable damages where a violation of the Labor Code is found. Accordingly, once a determination of liability under the Labor Code is made, the fact finder is left to determine what reasonable damages might be. Conversely, where reinstatement is sought under section 451.002(b), the only question available to the fact finder is a determination of liability. Once liability is found, the employee is *entitled* to reinstatement. No additional questions of fact exist. Therefore, the submission of an issue to the jury regarding the propriety of reinstatement would be an exercise in futility that the legislature could not have intended.

The plain language of section 451.002(b) clearly demonstrates that it is unnecessary for the issue of reinstatement to be submitted to a jury. Instead, the statute requires reinstatement where it has been requested and liability under section 451.001 has been found. Because the jury in this case determined that appellant was terminated in violation of section 451.001 and appellant affirmatively requested reinstatement, the trial court erred in failing to order that appellant be reinstated to his former position with Texas Dental.[1] Appellant's first point of error is sustained.

## C. Punitive Damages

In his second point of error, appellant contends that the trial court erred in failing to award the punitive damages found by the jury. The jury in this case determined that appellant was discharged in violation of section 451.001 of the Labor Code; however, the jury found no actual damages. The jury next determined that Texas Dental's actions in discharging appellant had been willful and malicious, and found punitive damages in the amount of $100,000. Because the jury found that appellant suffered no actual damages, the trial court did not award appellant the punitive damages found by the jury.

■ It is well settled that recovery of actual damages is prerequisite to receipt of exemplary damages. *See, e.g., Nabours v. Longview Savings and Loan Ass'n*, 700 S.W.2d 901, 903 (Tex.1985); *City Products Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex. 1980); *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721–22 (Tex.App.—San Antonio 1994, writ denied); *Nationwide Mutual Ins. Co. v. Holmes*, 842 S.W.2d 335, 339 (Tex.App.—San Antonio 1992, writ denied); *see also* TEX. CIV.PRAC. & REM.CODE ANN. § 41.004 (Vernon Supp.1994) (providing that "[e]xemplary damages may be awarded only if damages other than nominal damages are awarded"). Specific to the present case, in a suit for wrongful discharge under the workers' compensation act, an employee must recover actual damages before he is entitled to recover exemplary damages. *Houston Northwest Med. Ctr. v. King*, 788 S.W.2d 179, 181–82 (Tex.App.—Houston [1st Dist.] 1990, no writ).

---

1. We note that double recovery concerns are raised in cases in which a plaintiff is awarded future lost wages and also seeks reinstatement.

In such a case, the plaintiff must elect the remedy he wishes to receive.

In *King,* the jury found no liability and no actual damages; however, it went on to find malicious conduct and awarded exemplary damages of $20,000.00. *Id.* at 180–81. The court held that jury questions regarding malicious conduct and exemplary damages become legally significant only where questions pertaining to liability and actual damages have been answered affirmatively. *Id.* at 182. Appellant contends that reinstatement is a form of actual damages sufficient to support recovery of punitive damages. Therefore, appellant argues that because he is entitled to reinstatement, he is also entitled to the punitive damages awarded by the jury. Appellant maintains that the value of reinstatement was proven by uncontradicted evidence at trial to be in excess of $160,-000.00.

The testimony to which appellant refers was submitted in support of actual damages, not in support of the value of reinstatement, and, more importantly, it was rejected by the jury. Even in cases where actual damages are not recoverable, it is still necessary to allege, prove, and *secure jury findings on the existence and amount of actual damage* sufficient to support an award of punitive damage. *Nabours,* 700 S.W.2d at 903 (emphasis added). Assuming, for the sake of argument, that reinstatement is a form of actual damages, even if appellant did introduce evidence of the value of reinstatement, he failed to secure a jury finding that would support an award of punitive damages.

Appellant alternatively argues that reinstatement is an equitable remedy which does not preclude the recovery of punitive damages. It is true that Texas courts will not deny punitive damages because an action is equitable rather than legal. *Id.* at 905. However, punitive damages must bear a reasonable proportion to actual damages whether they are sought in relation to monetary damages or equitable relief. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex. 1981). In the cases in which punitive damages have been awarded incident to equitable relief, a fact finder has assigned a concrete value to the equitable relief awarded sufficient to support an award of punitive damages. *See Nabours,* 700 S.W.2d at 904 n. 3

(citing cases in which the equitable remedy has involved the return of property to which a value was assigned); *see also Fillion v. Troy,* 656 S.W.2d 912 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (awarding punitive damages where fair market value of property ordered to be returned was found by jury).

In the present case, appellant obtained no finding of the value of the equitable relief sought on which an award of punitive damages could be based. While a jury issue is not necessary to the award of reinstatement, if such relief is to serve as a basis for punitive damages, an issue and finding regarding the value of the reinstatement is necessary. *Cf. Nabours,* 700 S.W.2d at 905 (stating that if the plaintiffs had not so limited the jury's consideration of damages, a damage finding supporting punitive damages might have been made). Appellant's second point of error is overruled. Accordingly, we do not reach appellee's conditional cross points of error regarding the punitive damage findings of the jury.

## D. Mental Anguish Damages

In his third point of error, appellant contends that the jury's failure to find damages for mental anguish is contrary to the overwhelming weight of the evidence. Mental anguish is a compensable injury for which damages may be awarded. The process of awarding damages for such an injury is difficult because mental anguish constitutes a subjective, non-pecuniary loss. Therefore, mental anguish damages are within the discretion of the jurors who are best suited to determine, by referring to their own experiences, the degree to which the plaintiff has suffered compensable mental anguish. *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649, 654 (Tex.1987), *overruled on other grounds,* 855 S.W.2d 593 (1993); *see GAB Business Services, Inc. v. Moore,* 829 S.W.2d 345, 350 (Tex.App.—Texarkana 1992, no writ); *City of Ingleside v. Kneuper,* 768 S.W.2d 451, 460 (Tex.App.—Austin 1989, writ denied).

The evidence submitted by appellant in support of his claim for mental anguish consisted of his testimony, the testimony of

**806**

his wife, and the records of his treating psychiatrist, Dr. Jimenez. Dr. Jimenez's records indicate that he diagnosed appellant with "major depressive disorder, single episode, non psychotic, secondary to job stress; pain disorder within agoraphobia secondary to job stress; severe job stress leading to current problems." Dr. Jimenez's records indicate that appellant reported difficulty sleeping, crying spells, a sense of worthlessness and helplessness, a loss of sex drive, and feelings of guilt and shame. Appellant himself testified that he experienced a great sense of loss and had suicidal thoughts after he lost his job with Texas Dental. Appellant's wife testified that appellant's loss of his job resulted in marital problems between the two of them.

While this evidence would certainly support a finding of mental anguish, when it is considered in light of the entire record, it is also sufficient to support a finding of no mental anguish. First, Dr. Jimenez's records indicate appellant's complaints and symptoms, as conveyed to him by appellant and as observed by Dr. Jimenez himself. Dr. Jimenez had no direct knowledge of the cause of appellant's symptoms when making his notes. Additionally, Dr. Jimenez's records speak of "job stress" largely in reference to the poor working conditions about which appellant complained, not in reference to his termination.

Dr. Jimenez's records also reflect that appellant had been treated for depression and similar symptoms prior to the loss of his job. Appellant, however, said that he had not received psychiatric treatment in the past. In the face of this conflicting evidence, the jury was entitled to question appellant's credibility. The jury could have also determined that appellant was predisposed to depression. Further, appellant testified extensively about his severe migraine headaches and the resulting seizure disorder. He did not attribute this illness to the loss of his job, but, again, to the poor working conditions at Texas Dental. The jury could have determined that much of appellant's mental anguish stemmed from his illness, not from his termination.

We must note the subjective nature of a mental anguish question and the wide discretion given to juries in determining such questions. *See Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 85 (Tex.App.—El Paso 1992, no writ) (finding that a jury's award of damages for mental anguish is virtually unreviewable). Under such a standard, the record supports the jury's finding of no mental anguish. Appellant's third point of error is overruled.

The portion of the trial court's judgment awarding appellant no monetary damages is affirmed. The portion of the judgment denying appellant's motion for reinstatement is reversed and judgment is rendered that appellant be reinstated to the position he held at Texas Dental Plans, Inc. on the date that he was terminated.

RICKHOFF, J., concurs.

RICKHOFF, Justice, concurring.

This case is just the latest example of why the Texas Supreme Court should revisit the very basic issue of whether juries should be advised of the effect of their answers in civil cases.

Under current law, civil juries are not allowed to know the effect of their answers. TEX.R.CIV.P. 277. Since law school, I have viewed this prohibition as an odd dichotomy, considering we are the only jurisdiction that allows complete sentencing in criminal cases. Thus, we ask jurors to resolve life's most difficult issues in criminal cases, but in civil cases we shield them from knowing the effect of their answers to the submitted issues, apparently distrusting their integrity and demeaning their intelligence.

Here the jury clearly thought Texas Dental engaged in reprehensible conduct by their award of $100,000 in punitive damages. Yet, because they were not told that Texas law requires them to find actual damages in order to support an award of punitive damages, the will of this jury is completely thwarted.

It is not for an intermediate appellate court to alter consistently applied precedent. Such an alteration would require an in-depth analysis and resolution of the implications of such a change beyond this case. With these

few additional comments, I join the majority opinion.